May it please the court my name is Michael Lawler and I'm here for the appellant Raymond Aigbekaen. Your honor the issue before the court I submit is the very question that was left unanswered excuse me in the court's opinion in Coles's hope I'm pronouncing it correctly where the court recognized that at some point even a search initiated at the border becomes so it could become so attenuated from the rationale for the border search exception that it no longer would fall under that exception. We submit to the court that this is that case where the search of Mr. Aigbekaen's electronic devices although the seizure occurred at the border was so attenuated from the exception itself that a warrant was required. The lower court in its analysis and I sort of concede that this was our original analysis to this court was a bit of a hybrid between the border analysis and Riley and although we still maintain that the basis of the information that was taken from Mr. Aigbekaen and searched being that it was a cell phone and electronic devices as Riley indicated there's so much information there so much private information that it brings a heightened level of concern for the court that ultimately that this case hinges upon the fact that the basis for the search or resubmit the lack of basis was so attenuated from the border that a warrant was required. The record of the search found out after an investigation occurred in April of 2015. You have a lot of moving parts. There are a lot of moving parts. You have an initial border search or search. I won't call it a border search yet. And then you have additional searches there which there is some indication as I understand from the government they call it MOOC because those latest did not reference that first search. Yes, yes your honor. So why don't you address that? The MOOCness question? Well MOOCness or independent source whatever you want to call it. Well I don't think that there is an independent source for a few reasons. Number one I think the record is devoid of what occurred with these devices over the period of two weeks that the government possessed them and then replicated them. There was no record evidence below and so I'm submitting that it may be proper for this court to remand the case. Number one to determine what happened with the information taken from Mr. Ibeton's devices during those two weeks. There is an indication that some of the information may have made its way into an application for a warrant for Facebook. Did I just understand you to say that you think it may be proper for us to remand on the question of whether the district court should decide whether the independent source doctrine applies because it is a factual determination that needs to be made that it never made? It is a factual determination and again, the argument below in the court's ultimate ruling focused whether or not because these were cell phones, whether or not Riley sort of trumped the rationale for a border search unless on this court's, as I said, the question that was left unsaid in Colza's whether or not in a nontraditional border search whether or not it is so attenuated that either a probable cause is required or probable cause and a warrant is required. That is because your client didn't make that argument to the district court. Didn't have the benefit of the later fourth circuit decision in making that argument. So it puts us in a difficult position of trying to decide a new issue that was not briefed and argued below with respect to when a warrant, if ever, is required in this context. Well, I submit, I don't think it wasn't argued. I think the record is a little wanting on exactly what happened because the court was not, the counsel below did not persist in asking for record evidence of what occurred with the devices over that two week period of time and whether or not information was utilized as I indicated. But what I'm saying is this attenuation argument. I agree, they made the argument a warrant was required. But the theory there is a warrant was required because Riley in essence trumps the border. There is this second argument which comes out of our decision from last year that there are some searches at the border that because of their purpose or justification should require a warrant or potentially require a warrant. That's the argument that's sort of new here and so we're in a position of trying to decide that without sort of a decision below and without sort of a factual background in which to do that. Which is why I do think if the court, what we do have here, the record I think is clear, is that there was no nexus at all between Mr. Ibokan's entry into the United States and the basis for the search. This was, I think the government will concede, non-routine. They were not going through Mr. Ibokan's luggage because he was coming into the country. Those are two different questions, right? So to say that there's, I mean those are different questions, right? Because you could well say that keeping child pornography out of our country is exactly one of the rationales for the border search. And that there was, at least hypothetically except for me, reasonable suspicion that there might be child pornography or evidence of child pornography on these devices. And that would, if that was the facts, then that would support using the border search to keep child pornography out of our country. Is there any evidence that Homeland Security investigators who conducted this search ever expected to find child pornography? I think, to be fair, Judge Bredar found that there was reasonable suspicion to believe that Mr. Ibokan was engaged in either human trafficking or that there may be, I don't think there was a finding that there was reasonable suspicion that he'd have child pornography. Right, I don't think there was either. Judge Bredar found that human trafficking was afoot by Mr. Ibokan. And there was evidence below, I'm sorry, but there was evidence, and I agree there was no finding, but there was evidence that was part of the law enforcement information that he was videoing the victims of his sex trafficking. I'm not confident that that information was in possession of the government at the time they requested the search be made at the border. I thought it was just a statement that whatever the hotel was just being to say they could have been up there filming. They could have. And it kind of went on and never was picked up. This was an investigatory. Right. And the trial court made that determination. In fact, the trial court even said, you know, you don't have very much of your own pornography. I mean, if it was the pornography, we're in a whole different, we're in contraband. We're in a whole different ballgame, as Judge Richardson has pointed out. I agree. But it's just not that on this record because all you got is that naked statement and no follow-up from it. And we have Kelly Baird testifying at length, never mentioning that. She's the HSI agent. She testified at length, and there was, so there was testimony, of course, of human trafficking. Right. Contrary to, and I don't mean the split hairs and the difference between. Domestic sex trafficking. Domestic sex trafficking that occurred in New York. Like, I mean, there was no doubt there was sex trafficking of underage girls. And there was evidence that in doing that, that he had taken photographs of those girls to put on back page. But that was never part of the evidence that was put forward for the border search. In fact, Agent Baird testified at the hearing that she did not believe that she needed to have done any investigation in order to trigger the search. In other words, that's a good way to have done it, to have made this a pornography case. We wouldn't be here today if they didn't do it. They made this an investitory-type procedure of stopping him at that border, totally, as the district court pointed out, based upon that. Correct. Now, I'm not prepared to concede that we wouldn't be here if this was child pornography because I would still submit that you need a warrant under the circumstances here that the justification for the search is untethered to the border exception. Spend your time on the facts here, on the facts here. Yeah, and as we've been discussing, the facts here are that this was a domestic sex trafficking operation.  She had given a statement. I'll submit that there was an indication that Mr. Ibacon was involved in that sex trafficking, but it was domestic. HSI uncovered the fact that Mr. Ibacon would be traveling, and based on that fact, used it as an opportunity. The directive was for Customs and Border Patrol to stop Mr. Ibacon, seize his electronics, and then the electronics were thereafter taken and replicated. Can I, just before your time runs out, I just want to give you the opportunity to respond to the good-faith argument that the plaintiff makes. When the search is done in 2015, was there any reported case law requiring a warrant? I get the suspicion issue separately, but requiring a warrant in a border search based on the purported purpose of that search. There was no, there is no case, I believe, even still. Right, but what's relevant is when it's 2015. I know that I suspect there's not one yet. This search took place prior to the search in Colzuz, our case from last year, right? It did. Trust me on this. The answer is yes. I appreciate the answer and the question. No, no, I'm just going to make, I mean, because that's... The reason I think that this is not good faith is because although there is no holding in a court saying that a warrant is required, there is a body of case law talking about the fact that there needs to be a lack of attenuation or a causal link, were you, between the basis of the search and the border exception, which is what you don't have here. But not in 2015, right? So that's Judge Harris's opinion last year, Judge Costa's opinion from 2018. I get that there's some, although none of those are actual holdings to that effect, but there's no case. I'm just understanding how an agent is supposed to know that he needs to get a warrant, assuming you're right on the merits. But he's supposed to know that he needs to get a warrant in 2015 when no court, even still, has said that that's a requirement. Well, while I agree that no court has said that that's a requirement, I think the question is inverted. The Fourth Amendment, you start with reasonableness. You start, I think, with the notion of whether or not you have a sufficient level of probable cause or reasonable suspicion to have the search, whereas here, the government is making sort of an end run around the border exception and saying, we don't need any basis to search, and we don't need a requirement because of the border. And I think that turns the border exception on its head. And I will say that this is the same agent and the same set of facts that came before this court but wasn't decided, and I'm going to mispronounce the name of this case as well. Sabucci, I believe, Judge Grant, a long opinion on a very similar set of facts, but the case wasn't decided because it was dismissed as moved before the court could render a decision. I just want to understand. I mean, if, and I get this is all sort of counterfactual, but it's sort of what we do in the good faith context. Had the court read the previous Supreme Court cases and our decision in ICS and otherwise in 2015, your position is that they should have been able to divine that a warrant was required, and that the failure to divine that is bad faith. Well, I'm not, again, forgive me. I think I'm splitting hairs with you a little bit here, Judge. That's okay. That's what you're supposed to do. Yeah, but I'm not saying they should have divined anything. Rather, what I'm saying is they took advantage of an exception that is inapplicable to the facts here and used that exception to make an end run around a warrant requirement. The government ultimately got a warrant in this case. I don't know and would not concede that they had sufficient probable cause information at the time to obtain a warrant, but I'm saying that given reasonableness, the Fourth Amendment requirements, that the better practice in this case would have been to get a warrant, and failing to do so was bad faith. And if I could, I'll reserve the remainder of my time. Thank you. You look like you have a lot to tell us, Mr. Maddox. Good morning, and may it please the Court. I'm Assistant U.S. Attorney Matthew Maddox here, appearing for the United States. I'll caution the Court, and I don't want the Court to lose sight of the fact that none of the evidence obtained as a result of the border search was introduced in trial or in any way affected the outcome of this trial. So at the very least, at the very beginning and at the very end, this issue is moot, and if there was any error, that error is necessarily harmless because none of that evidence was presented at trial or affected the determination and the conviction of this defendant. Is it mootness or independent source doctrine? Well, so you may have to imply independent source doctrine in order to answer the question of whether there was mootness. I mean, that fits on all fours with it. I mean, essentially, you've got one source, and you say this is totally separate. You've got two warrants that you have within the warrants on, I think, August 15th and then September 21st, and you say you don't even mention the forensic on the border there within it. So, I mean, the contention there would be it's an independent source doctrine, but to get there, there's some factual things that have to be determined. The Court didn't do it. The Court didn't do it because the Court found that the border search was legal, so it didn't have occasion to decide whether or not there was an independent source, and at that point in time at the pretrial motions hearing, the trial hadn't happened. So to stand on the first determination, was the border search legal? If it wasn't legal, then we're in a whole different analysis here. But the basis of saying it was legal was what? The basis for saying that it was legal was that it occurred at the border, and therefore the border search doctrine applied, and also that it was a non-routine search because it was particularly invasive, but the government had reasonable suspicion to support the non-routine search, and that determination that we had reasonable suspicion was based on the balance of judicial precedent at the time. This Court hadn't ruled yet in Colsus, but the Court found that individualized suspicion was required and declined to define whether individualized suspicion meant reasonable suspicion. Reasonable suspicion of what? Reasonable suspicion of criminal activity, Your Honor. What type of criminal activity? So in this case, the government proffered two bases for finding reasonable suspicion. One was that it was reasonable suspicion that Mr. Ibokan had been engaging in ongoing human trafficking. Domestic human trafficking. We had a certainly probable cause that domestic human trafficking had occurred, but also reasonable suspicion that it might have been international. Where does that come from? Where is that evidence? The items that he brought back to the United States from Nigeria were the government had reasonable suspicion that those were the instrumentalities by which he committed the human trafficking offense here domestically. What do you mean by that? So these are the devices that he used in order to commit the offense. He used them to post back page ads for the minor victim. He used them to write the back page ads. These were items that he used and the victim made a statement that he took the laptop wherever he went and he also used the cell phone to post back pages. Can I ask a question? Sorry, this is a factual question. You mentioned back page, it made me think of it. At the time of the search at the airport, right, so the border, what we're going to call the border search, did law enforcement, I don't necessarily mean the immigration agents, but did law enforcement have evidence that they were posting photographs of underage girls on back page? Which goes to, I think, what your next question, your next point is, was there reasonable suspicion, probably not probable cause, but was there reasonable suspicion that child pornography might be involved? I'm not sure if the record reflects when the government obtained records from back page to show that some pornographic images were included. I know, but was there any information? I just don't know the answer. I'm not trying to push you one way or the other. I really have no idea. But I know at some point they developed information about back page. That's what I'm trying to ask. Do you know, and you can say I don't know, that's totally okay too, but do you know whether law enforcement had evidence that back page was involved as part of the sex trafficking endeavor at the time the border search began? Yes. I believe the victim made statements that sex acts were arranged through the website back page. The back page records may or may not have been obtained at the time. Do you know when that, do you have any JA site or when the witness said that? I know the witness eventually says that, but what we're concerned about and interested in, and if you don't know, please don't make it up. I'm not trying to get you to, is when that information came into law enforcement's hands. Because if it comes in two months later, we can't rightfully sit up here and consider it now. The question is what information did they have at the time that it took place? As to back page, I'm not specifically aware. I will refer the court to the portions of the JA where at the motions hearing, there was testimony from Corporal Schlepper, who was the lead investigator before HSI got involved, and Kelly Baird, who eventually became the HSI case agent. However, it is clear from the record that the government was aware that there was a statement made by a hotel manager about a movie being made in the hotel room. That's all you have. You get that one statement, and then from that statement, nothing was developed from it, and even a trial judge expressed real concern that there was nothing here. It was an investitory basis. Your basis is that there's a laptop that's come from Nigeria, and as I understand what you're saying is, because that laptop is coming from there and it could have been used, that makes it international. Is that where you're going? It could also contain child pornography. But where is the child pornography link to the HSI search warrant? It just doesn't exist. Kelly Baird doesn't say one word about it. None of the warrants. There are a million warrants that HSI put up. None of them say anything about child pornography. Well, the evidence says that child pornography ultimately was not developed. There's nothing said at the motions hearing about it. I just want to take a step back for a moment and note that Judge Wynn emphasized this point that there was just this one statement. But I would emphasize that the determination of reasonable suspicion and probable cause were made upon the totality of the circumstances. Now, in front of this court, that sounds like a good argument. But you didn't make this argument at the motions hearing. There was no type of alluding to child pornography as being the basis for this particular search. It all focused in terms of an investigatory type search. What you just said here, your whole basis is, when you asked Judge Mott's question, it wasn't just domestic sex activity. It was international because they had some instrumentalities that you maintained. That's the basis for saying it's international. Is that it? Well, I think that this discussion about whether it was international mainly arises from the Colson's case. So the Colson's case, as Judge Mott's pointed out, came along after Judge Berdara's ruling. So Judge Berdara's focus mainly on whether or not there was reasonable suspicion of any criminal activity, not whether there was a nexus to some sort of transnational or international crime. That issue had been presented to the court. But the key thing is it was activity that was domestic. That's all the point is. Yeah, he found reasonable suspicion, criminal activity, but domestic criminal activity. It would have become transnational once he transported child pornography internationally and then brought it back. No, you keep bringing up child pornography, but that's nowhere in the record. Let me back up and just ask the question, purely factual. You referenced the hotel employee. Was that information known to investigators prior to the search at the border?  And the testimony of Corporal Schlepper. How do we know that? That's in Schlepper's testimony? It is in Schlepper's testimony. At the hearing? Yes, at the motions hearing. Okay. He indicated that he turned over his entire investigative file over to HSI, and that included all the information. Yes, but HSI made the affidavit for the warrant. It was their warrant. And Kelly Baird says she got it, but she doesn't say a single word about it. She's questioned at length. And it's not in the warrant. She's not questioned at length about child pornography. No, because she's not. Because it's not child pornography. What is your basis for this? The basis is that we had a hotel room where it was clear that a great deal or significant amount of sexual activity had taken place because condoms were found there, used condoms, and various other indications of prostitution activity had taken place. This is physical evidence found inside the hotel room. Coupled with that, you have a statement of a minor victim saying that she had been trafficked across multiple states from New York to Maryland to Virginia and then back to Maryland. At various hotel rooms, she had been trafficked. As for her, prostitution services had been posted on Backpage.com. And in addition to that, you have the hotel manager reporting that he was concerned that he heard talk about a movie being made in that hotel room, which would give rise to reasonable suspicion. That last phrase that you talked about, the hotel manager concerned about a movie being made, is all you have. And that doesn't appear anywhere. I mean, I don't even know why you're pursuing this because it just isn't there. I understand the judge's point, but I would just emphasize that this is a totality. This is the reason why I went through a number of factors. And when you consider that statement in its context, the government submits that it would give rise to reasonable ---- But that statement is never before the judge because it's not before the judge to get the warrant. But it's not. I think, so I understand your point is whether there was objective, reasonable suspicion. Nothing to do with a warrant, right? It's just a question of whether there was objective, reasonable suspicion at the time of the first border search, which was done without a warrant, whether there was objective, reasonable suspicion that child pornography would be found. Exactly. And so the question of whether it was later presented in a warrant or later became the focus of the investigation, just like the question of whether there's later evidence developed one way or the other doesn't affect the reasonableness or the evaluation of that first search. When you put your reasons for getting a warrant down, aren't you supposed to put the ones that you rely on? I'm sorry. I didn't understand the question. You want to go get a search warrant, right? Yes, ma'am. Don't you put down, if you are the government, the reasons for the search, why you think there's a basis for the search? Yes. Yes. And so was child pornography mentioned? We're not seeking evidence of child pornography, and it's not in the record, but there could be a number of reasons that we excluded that. One of those reasons could be the determination by the government that we didn't have probable cause to find evidence of child pornography. You could have reasonable suspicion but not probable cause. Exactly. And I do think that there's a case for that. I would submit that we did have probable cause that there was child pornography, even though we didn't seek a warrant. Don't go that far. Stick with where we were. But I would agree with Judge Richardson that this is an objective standard. Reasonable suspicion is an objective standard. The subjective intentions or the thoughts of the law enforcement agents is of zero relevance, and I believe that the defendant concedes that. Secondly, it's a totality. That helps you. Go ahead. It's a totality determination, so that statement is not isolated. It must be considered in connection with everything else that was happening at the hotel. Thank you, Your Honor. Moving on with the independent source analysis, and the government does cite a couple of cases in support. The Najjar case of this court as well as the Segura case of the Supreme Court is applying a good model for the court to follow in conducting its independent source analysis. Judge Wynn made the point earlier that in order for us to reach the independent source determination, there are factual determinations that are required that haven't been made. Do you agree with that? Do you think if we thought independent source was the appropriate analysis that we would need to remand it for the district court to make those determinations? I don't agree with that. There's a citation to the Murray case, I believe in the opening brief. The government submits that the Murray analysis doesn't apply because Najjar and Segura are more factually similar to the case that we have now where you have one border search and there's a forensic extraction, completely not used at trial. There's a subsequent forensic search that happens months later that's ultimately used. Any sort of taint would have been removed by the passage of time as well as the fact that the search warrant applications in support of those subsequent search warrants didn't mention at all the fact that a border search, the defendant points out that there isn't enough of a factual record about what happened during the two weeks that the devices were seized. But I emphasize that argument is completely forfeited if not waived because below. And is it relevant? I get the forfeiture, but is it relevant? What could have happened during those two weeks that would render the independent source doctrine inapplicable to the second search warrant? I'm not exactly sure. I'm just going off of counsel's answer to the question earlier about why or about the independent source analysis. And he mentioned the fact that we don't know what happened during those two weeks and there isn't enough of a factual record here. But I'll note that the – Was that three months between this forensic search and the warrants? I'm sorry, Your Honor? Three months. There was two weeks. Between the forensic searches? Yes, Your Honor. A period of two months in the Segura case. I believe it was warranted in the Jara case, one or the other. There was multiple years that had passed between the two searches. In both cases, the court analyzed whether or not there was any information about the illegality was submitted in connection with the search warrant application. But I just wanted to touch back on this point about the two weeks and the two-week delay on which the court requested supplemental briefing. That two-week delay or that two-week time period in which the defendant was deprived of his devices was not presented at all in the district court. It wasn't even raised in the opening brief. In fact, in the district court, the argument was completely waived because the defendant, upon being presented an opportunity to explore factually what happened during those two weeks, he passed on it. He said he had enough information on the border search issue and he didn't need to know what happened during those two weeks. And that is reflected in the joint appendix at page 316 to 317. So as to that issue, the issue of the two weeks, this court has to apply, at best, a plain error analysis. The government submits that there was no error because two-week time period is not an unreasonable time period in which the deprived body of devices in order to conduct a forensic exam. I'll refer to the Pratt case, for example, where zero action had taken place by law enforcement over a period of a month. And then presumably there was a longer time period after that point that a defendant had been deprived of that device that entire time period, beginning at a month but certainly in excess of a month. Here we have two weeks. Didn't the trial court make a determination insofar as the independent source rule in this case? Did it even consider it? It didn't consider it because it found that the border search was legal. Do I understand you to say you don't need to make a factual determination on that in response to Judge Richardson's question, that in assessing whether an independent source rule applies, you have to determine whether there are independent factors that are untainted. So how do you do that without making a factual determination? It's clear from the record. It's clear from the record. It's clear that there are independent facts other than the fact that it just says it? It's clear that the evidence that was used at trial had an independent source, a source independent from the prior border search. Because if you look at the search warrant application. That's a nice conclusion, but that doesn't tend to reason if you don't have anything to back it up with to say it's clear. It's something we can say at any time. We can say it's clear it was a border search. It was clear anything. That does not establish it. The question here is the trial judge never got to. And the question when you're dealing with you have an initial search, and the question is when you have the subsequent searches, was it tainted to some extent by the first in determining whether there's independent evidence here? And independent evidence seems to say somebody else makes them find as a fact rather than to say it is clear. Well, if you look at the record, the record shows it includes the search warrant applications, and you would see from the affidavits there the information that was presented to the magistrate in support of those search warrants. There was no mention of a border search. So, therefore, it could be a factor. What we don't know is whether that evidence was tainted. That's the problem. You don't know if the evidence for the second watch was tainted in determining whether it was that the independent source rule applied. And to determine it, you have to make findings of fact. It doesn't mean you can't win. It just means somebody has to make a finding of fact other than say it is clear. It's all in the application. If you look at all the facts in that affidavit, all of them precede the border search except for where it mentions that Mr. Ibokan showed up at JFK with the devices. It didn't mention what happened after that. All the PC in support of the search warrants preceded the border search. Therefore, it could not have been based upon anything that happened during the border search. Can I ask a question? Do we get to independent source given the good faith acceptance in light of where we were in 2000, much less where we are today, but certainly where we were in 2015 with respect to the need for a warrant to conduct this type of search? Yes, the good faith analysis is an independent basis upon which the court could affirm what happened in the district court. Obviously, there's been no case. How do you get there without first determining whether it's an independent source basis? Because if you determine that the initial, if it was tainted or that the initial border search was illegal, how do you get the good faith? That the border search was conducted in good faith based on precedent that dates back to the 1800s saying that you don't need a warrant to conduct a border search. And more recent precedent says that you may need reasonable suspicion in order to conduct a border search as intrusive. The good faith, as I understood it, applies to the two warrants on August 15th, September 21st. And the reason is because neither one of those warrants, unlike for some reason, I don't understand why the defendant didn't appeal, the Facebook one. Facebook did reference it. Those two didn't.  the officers acted in good faith. You can deal with this case that you want to in terms of what came up later in terms of individualized suspicion. But really the basis is that. It didn't even reference. So the officers who look at it, they don't see there's been another search. So they act in good faith. But if there is already the lack of an independent source rule in terms of those two additional things, you've got to first determine that before you get to the good faith. May I answer? Yes, you still have some time. Thank you. So I think we may be talking about two different things. You're talking about good faith as to the search warrants, the second set of search warrants that took place. I was referring in my previous answer to good faith as to conducting the border search. So I think that we have good faith on both grounds. I thought you said the border search was legal. Was legal or illegal? I said that it was a legal border search. It was legal, yes. So what your fallback position is. You said if it's illegal, then it was done in good faith. The border search was done in good faith. Exactly right. And I haven't yet addressed it. I know my time is up. I haven't yet addressed the actual legality of the border search itself, and certainly it was legal. No court has held, dating back to the 1800s, no court has held that a warrant has ever been required for a border search, including this court. This court passed on that opportunity in Nicole's case. There's a tremendous amount of Supreme Court precedent, precedent from just about every circuit court that has border states, that says that warrants are not required in this context. At most, reasonable suspicion of criminal activity is all that's required. That's what the Cotterman case held, and that was a case that involved contraband child pornography coming across the border. The Ickes case talks about how broad the border search doctrine is. It goes through at lengths. It goes out of its way to talk about how broad that doctrine is. If the court accepts the defendant's interpretation of the doctrine, it would only apply in cases where somebody is coming into the United States with guns or drugs or contraband currency or something like that. Conveniently, he excludes child pornography when we have reasonable suspicion. I understand that invokes laughter each time, Your Honor. Well, because I still just really don't understand your argument, because if you look at the warrant, don't we have to see that there's evidence that Homeland Security, the people that conducted this search, expected to find child pornography? Not that there was something up in – and we look at the objective evidence. We look at the warrant applications. We look at what the witness said. Where is the evidence that they expected to see child pornography? And in answering that, will you include is their expectation a subjective expectation or an objective expectation? Their subjective expectation is completely irrelevant. This is an objective standard that we have. Okay, but I'm looking at the objective evidence, the warrant applications, the testimony of Kelly Baer. Where do we find the objective evidence they were expecting to find child pornography in the border search? I don't believe that that's the question, Your Honor. The question is not whether or not we expect that law enforcement expected to find evidence of child pornography. The question is whether or not there was objectively reasonable suspicion that a reasonable officer could hold that there was child pornography on those devices. And given the testimony of Corporal Schlepper, in connection with all the other evidence that had been gathered at that point in time prior to the border search, there certainly was reasonable suspicion, at least, that there may be child pornography on those electronic devices. Certainly, in retrospect, you would have hammered that a little bit more at the motion hearing where it was just casually mentioned. And, I mean, when you come here, now you see that pornography is a whole different ballgame. Well, the Colson's case made the difference, Your Honor. The Colson's case talks about the nexus that has to exist between the rationale for the border search and this particular border search, that issue that's challenged in any particular case. I'm just dealing with the quantum of the evidence and then your manner in indicating he basically said this is a very weak thing on this pornography. So he focused on the sex trafficking, as did the government. And throughout this whole proceeding, it was domestic sex trafficking that became the basis for this one. I think that the having- I think, really, you'll have to let the judge have the last word. You're a little bit over. Thank you, Your Honor. Thank you. Thank you. Thank you. To respond just to a couple points, I think good faith doesn't apply. We don't reach good faith because the error here, part of the error, is, as the government indicated, the defendant's denial of his possessory interest in these items that were seized from him. Now, again, there wasn't a record on this below. So to the degree that the court finds that the border search was illegal and the government is relying on the fact that it is either moot or harmless or that there was an independent source, I don't think there's a sufficient record on that issue. And I do think that a remand may be appropriate. More specifically, Judge Richardson, to talk about good faith, we did cite the Stephenson case-excuse me, the Stevens case, which is 764F3-327, which talks about sort of deliberate and reckless disregard for the Fourth Amendment. Yes, Colza's wasn't out, but Riley was out at the time. That's a 2014 decision. It seems like the government's intention here was to get at the defendant's electronic devices when they did not have a warrant or probable cause to access those devices. And that's why we submit that there was no good faith in this case. So with that, unless the court has any other questions, we submit that this was a nontraditional border search that required a warrant. Lacking one, the court should either grant Mr. Ivocan a new trial or remand for further proceedings. Thank you very much. Thank you. Mr. Lawler, I understand that you're court-appointed too. We very much appreciate your service to the court. Okay. We will come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, James A. Wynn Jr., Julius N. Richardson